## A. E. Kuolt, Commissioner of Banking of the State of Wisconsin, etc., Appellee, v. C. E. Canright et al., Appellants.

1. PROCESS, § 26*—*when issuance and service of are waived.* A party who enters his general appearance in a case and makes a defense on the merits thereby waives the issuance and service of process and is in court for all purposes.

2. JUDGMENT, § 196*—*when judgment against person not served with process is valid.* A judgment awarded against the general property of all defendants and against the "separate property of the defendants served in this case, to wit  *  *  *" naming them, *held* valid as against one of the main defendants, although the record showed that while he had entered his appearance in the action he was never served with process, since the words "served in this case," being wholly unnecessary to the validity of the judgment, could be treated as surplusage.

3. BILLS AND NOTES, § 377*—*when holder of negotiable instrument presumed to be holder in due course.* Every holder of a negotiable instrument is presumed to be a holder in due course in the absence of evidence to the contrary.

4. BILLS AND NOTES, § 241*—*when purchaser of negotiable instrument is deemed not to be holder in due course.* In order that a purchaser of a negotiable instrument shall be deemed not to hold it "in due course," it must appear that he had actual knowledge of the infirmity or defect complained of, or knowledge of such facts that his action in taking the instrument amounts to bad faith.

5. BILLS AND NOTES, § 243*—*when title of assignee is not affected by knowledge of suspicious circumstances or gross negligence.* Neither knowledge of suspicious circumstances nor even gross negligence will affect the title of an assignee of a negotiable instrument, in the absence of bad faith.

6. BILLS AND NOTES, § 247*—*when bank is a bona fide holder in due course.* Where it was agreed by signers of a promissory note that, on its being signed by seventeen persons altogether, each of whom should be financially responsible for at least $500, it should be delivered to the payee named therein, and, after it was signed by ten persons so responsible, the treasurer and manager of the payee procured the signatures of seven other persons not so responsible and it was accepted by a bank which credited the payee with its full face value, *held* under the evidence that the bank was a bona fide holder of the note in due course.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Sangamon county; the Hon. James A. Creighton, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 13, 1916. Rehearing denied December 2, 1916.

Alonzo Hoff, for appellants.

H. L. Child and Simmons & Walker, for appellee; Wilson, Warren & Child, of counsel.

Mr. Justice Graves delivered the opinion of the court.

On April 3, 1914, a corporation known as the State Sales Corporation of Springfield, Illinois, was indebted to another corporation known as the Commercial National Advertising Agency of Chicago, in the sum of about $1,600 for advertising for sale, stock in the United Owners Funding Company. On that date, for the purpose of securing the payment of this obligation as well as to secure the advertising agency for future obligations that should accrue for a continuation of like advertising, a meeting was held at the office of the State Sales Corporation in Springfield, which meeting was attended by one Loomis, an employee of the advertising agency, and several persons interested in the sale of the stock of the United Owners Funding Company, at which meeting it was agreed between those present that a note for $8,500 due in six months, drawing seven per cent. interest per annum from date and payable to the Commercial National Advertising Agency, should be procured, signed by seventeen persons who should each be financially responsible for at least $500, and that such note when so signed should be delivered to the payee named therein. The note was thereupon made and the signature of ten persons representing a large amount of wealth was obtained by the morning of the next day and was then taken by Clark H. Loomis, one of the signers of it, and at the

time the treasurer and general manager of the payee therein named, to Chicago, with the understanding that it should not be used as a note until seven additional signatures of persons who were each financially responsible for the sum of $500 were obtained to it. The testimony of C. E. Canright, one of the signers of the note and at the time the president of the State Sales Corporation, tends to show that when the note was signed by all of the first ten signers, except Anderson, it was the understanding that, if the advertising did not produce the money to pay the note, those signers who were present at the Springfield meeting "would have to pay it." The advertising agency did its banking with the Commercial and Savings Bank of Racine, Wisconsin. On April 24, 1914, Loomis wrote to C. R. Carpenter, cashier of that bank, telling him of this note and that it then had but ten signatures; that it must have seventeen before it could be negotiated; that those who had signed it were amply good for many times the amount of the note and that, for that reason, the seven remaining signers need not have any actual financial responsibility, but that he could not bank the note until the other seven signatures were obtained. Carpenter replied suggesting prompt action in getting the additional seven signatures in order to hold those who had signed, and to prevent any claim that the note was illegal, and requesting that the note, when completely signed, be sent to his bank as collateral security for a then existing overdraft. It seems evident, from the proof in this record, that Loomis hired seven men with no financial responsibility to sign the note in question and that he then, on May 4, 1914, sent the same to Carpenter with the direction to use his own judgment about holding it as collateral or crediting the same to the account of the advertising agency. On May 5, 1914, Carpenter returned the note for indorsement. On May 6th, Loomis returned it to Carpenter properly indorsed. On May 5, 1914, Car-

penter wrote to the Illinois National Bank at Springfield, asking if a note signed by Harmon, Anderson, Booth, Bunn, Willett, Telfer and Baugher, among others, would be good, and on May 8, 1914, he wrote to the Williamsville Bank asking for the financial standing of Telfer. The answers to these letters disclosed no valuable information as to part of the persons named, but gave such rating as to part of them as to show the note to be amply good. Thereupon on May 20, 1914, the note was accepted by Carpenter and the account of the advertising agency was credited with its face value. On September 17, 1914, the Racine Bank, of which Carpenter was cashier, being in difficulty, appellee, as Commissioner of Banking of the State of Wisconsin, took charge of it, and finding the note in question among its assets later brought this suit and obtained the judgment appealed from.

The first error argued is as to the form of the judgment, because execution is therein awarded against the joint property of all the defendants and against the "separate property of the defendants served in this case, towit.: C. E. Canright," et al., when the record shows that Canright entered his appearance and was never served with process.

A party who enters his general appearance in a case and makes a defense on the merits thereby waives the issuance and service of process and is in court for all purposes. He cannot thereafter complain of the exercise by the court of jurisdiction over his person. The judgment would have been a proper one in that respect, if execution had been awarded against the joint property of all the defendants and against the separate property of those defendants by name of whom the court had acquired jurisdiction by the services of process or the entry of appearance. The words "served in this case," used in the record of this judgment, being wholly unnecessary to the validity of this judgment, may be treated as surplusage.

It is next urged that the Racine Bank was not the bona fide holder of the note in due course; that the letters that passed between Loomis and Carpenter are sufficient to charge the bank with knowledge of the infirmity in the note, and that the bank acted in bad faith in accepting the assignment of it.

Every holder of a negotiable instrument is presumed to be a holder in due course in the absence of evidence to the contrary. Section 59, art. IV, chap. 98, Rev. St. (J. & A. ¶ 7698); *Clarke v. Newton,* 235 Ill. 530.

In order that a purchaser of a negotiable instrument shall be deemed not to hold it in "due course," it must appear that he had actual knowledge of the infirmity or defect complained of, or knowledge of such fact that his action in taking the instrument amounts to bad faith. Section 56, chap. 98, div. IV (J. & A. ¶ 7695).

The defect in this note that it is claimed the Racine Bank had knowledge of was that the last seven persons who signed it were not such persons as it was understood by the first ten signers should sign it; that their signatures were purchased and that they were without financial responsibility. The only evidence which appellant claims shows that the bank had knowledge or notice of these defects is found in the correspondence between Loomis and Carpenter. We have carefully examined these letters and find nothing in them to show that Carpenter either knew of these supposed defects or knew of any facts that caused his action in taking the note to amount to bad faith. The curiosity of an inquisitive person might have been aroused by these letters, but it is certain that neither actual knowledge of the defect nor knowledge of such facts as to make the discounting of the note bad faith are shown. Neither knowledge of suspicious circumstances nor even gross negligence will affect the title of an assignee in the absence of bad faith. *Kavanagh v. Bank of America,* 239 Ill. 404; *Bradwell v. Pryor,* 221 Ill. 606.

Appellants have argued several claimed errors in the admission and exclusion of evidence and in giving and refusing of instructions, but they are without merit. A discussion of them all would unduly extend opinion and would serve no useful purpose. The judgment of the Circuit Court is affirmed.

*Affirmed.*