UNITED STATES FIDELITY AND GUARANTY COMPANY, a *Corporation, as assignee of* MARYLAND CASUALTY COMPANY, *a Corporation,* AND UNITED STATES FIDELITY AND GUARANTY COMPANY, *a Corporation, in its own right*

*v.*

WILLIAM A. EADES, III, and PRINCETON BANK AND TRUST COMPANY, *a Corporation*

(No. 12432)

Submitted September 21, 1965. Decided November 9, 1965.

*Kwass, Stone & Blue, Fred O. Blue,* for appellants.

*Johnston & Holroyd, Robert E. Holroyd, W. Broughton Johnston,* for appellees.

BERRY, JUDGE:

This action was instituted in the Circuit Court of Mercer County by the United States Fidelity and Guaranty Company, a Corporation, as assignee of the Maryland Casualty Company, a Corporation, under a subrogation agreement and United States Fidelity and Guaranty Company, a Corporation, in its own right, against William A. Eades, III,

a former employee of the Maryland Casualty Company, and the Princeton Bank and Trust Company, a Corporation, to recover moneys paid by the Bank to Eades on fifteen drafts issued by him and drawn on the Maryland Casualty Company, payable to fictitious persons whose names were endorsed on the back of the drafts by Eades and presented by him to the Princeton Bank which accepted each of the drafts and delivered the amount of money indicated in each draft to Eades. The Princeton Bank, after accepting and paying the amount of the drafts to Eades, stamped an endorsement on the back of each draft guaranteeing all prior endorsements and forwarded the drafts to a bank in Baltimore where they were paid out of funds of the Maryland Casualty Company, the drawee of said drafts. A final judgment was rendered against Eades in favor of the plaintiff and such action is not involved in this case.

The other defendant, the Princeton Bank and Trust Company, filed a motion to dismiss the action as to it, or in lieu thereof to quash the return of service, on the ground that 30 days should be given it to serve its answer under the provisions of Rule 12 (a) R. C. P. instead of the 20 days stated in the summons, and the failure to state a claim under which relief could be granted. No answer was filed by the defendant Bank and the plaintiff filed a motion for default judgment under Rule 55 R. C. P. on the ground that the Bank had failed to appear or otherwise defend the action relative to the allegation of negligence set forth in the complaint. On April 27, 1964, the trial court overruled the plaintiff's motion for default judgment and sustained the Bank's motion to dismiss because the claim failed to state a claim against it, and entered judgment in favor of the Princeton Bank and Trust Company dismissing the action. A timely motion to set aside the judgment dismissing the action was filed by the plaintiff which was overruled by the trial court on May 16, 1964, which in effect rendered final judgment dismissing the action on that date. Upon application to this Court an appeal from the judgment of the trial court of May 16, 1964 was granted on February 8, 1965.

The disposition of this case by the trial court was made under Rule 12 (b) (6) R. C. P. on the ground that the complaint failed to state a claim upon which relief could be granted. This fact is clearly set out in the trial court's order dismissing the action. Apparently, certain facts were stipulated before the trial court, but the stipulation is not contained in the record before this Court. The written opinion of the trial court is included in the record before this Court and states at the outset that by agreement of counsel the facts set out in the opinion were presented to the court in connection with the defendant's motion to dismiss the action. However, the stipulation entered into by the attorneys for the parties as to what should be contained in the record presented to this Court on this appeal contains a statement to the effect that an assertion in the trial court's opinion with regard to the agreed statement of facts did not conform to and was not correct as to one of the issues between the parties. The appeal stipulation sets out the contention of each party with regard to such matter. The plaintiff's brief under the division "Statement of the Case" contains the recital that the facts in this case are virtually as they appear in the complaint. The defendant's brief on the first page contains the following comment: "The preliminary statements in so far as they are germane are set forth in the brief of plaintiffs and as the record is short, we feel that it is unnecessary to restate these matters, especially since no evidence was taken in the proceedings in the Circuit Court."

Although a trial court's written opinion may be made a part of the record by a court order, when this is done it merely operates to point out the specific grounds under which the trial court acted. *Woodruff* v. *Gilliam*, 116 W. Va. 101, 109, 179 S. E. 873, 876; *Robertson* v. *Vandergrift*, 119 W. Va. 219, 193 S. E. 62; *Wilson* v. *Hix*, 136 W. Va. 59, 73, 65 S. E. 2d 717, 726; *Cottle* v. *Cottle*, 129 W. Va. 344, syl. 5, 40 S. E. 2d 863; *Rollins* v. *Daraban*, 145 W. Va. 178, 113 S. E. 2d 369. Therefore, under the circumstances of the case at bar, considering the contents of the record, statements in the briefs filed on behalf of the respective parties and the motion to dismiss which the trial court sustained,

the facts which are set out in the complaint will be used in the disposition of this case, since they are the only proper matters to be considered if the case is treated as disposed of under the provisions of R. C. P. 12 (b) (6).

The material facts as alleged in the complaint are as follows:

"2. For several years preceding the institution of this action, defendant, Eades, was employed by Maryland Casualty Company (hereinafter called Maryland), as manager of its branch office located in the City of Bluefield, Mercer County, West Virginia, and engaged, on behalf of Maryland, in the investigation, negotiation and settlement of claims involving individuals or companies covered by insurance contracts written by Maryland. In such capacity, he had authority to settle legitimate claims involving his employer's insureds and authority to draw and sign claim drafts to legitimate claimants for payment of any losses covered by insured's policies—authority, at least, in this latter regard, up to the amount set forth in each of the drafts hereinafter recited.

"3. For at least the last five years in which Eades was an employee of Maryland, plaintiff, United States Fidelity and Guaranty Company (hereinafter called Company), was the obligor on a bond in the sum of $250,000 by which it agreed to indemnity and hold harmless Maryland against any loss, including, inter alia, loss of property (money, currency, etc. as therein defined), occasioned by any dishonest or fraudulent acts of any of its employees regardless of where committed and regardless of whether committed alone or in collusion with others.

"4. Commencing in 1959, and while in the employ of Maryland but contrary to his authority, defendant, Eades, embarked upon a course of: issuing drafts through a named bank drawn to Maryland covering payments of alleged claims against [Maryland's] policy holders all of which were payable to the order of fictitious persons in specified amounts, endorsing payees' names thereon, but not his own, and presenting same' to Bank where each one was accepted, cashed and endorsed

by Bank and the moneys represented by said drafts turned over to him; all of which drafts are more particularly described and endorsed as follows:

"(a) Draft No. 167170, in the sum of $150.00, payable to Lucy Green, dated March 28, 1959, cancelled on April 2, 1959, and bearing on the reverse side thereof, above the line provided for endorsement by the named payee, the following legend: 'PREVENT FORGERY. Know your Endorser—Require Identification, and also with this endorsement stamped thereon: Pay to the order of any bank, banker or trust company. All prior endorsements guaranteed. Princeton Bank & Trust Company, Princeton, West Virginia'.

\* \* \*

[Here follow descriptions of 14 similar drafts with varied dates, numbers, sums, and payees.]

"The total amount of money received, and paid out by Maryland, as a result of the foregoing transactions was $8,226.38.

"5. As a consequence of the foregoing and enumerated actions of Eades and Bank, and as a further consequence of similar actions by Eades and other parties, not here made parties to this suit, Maryland presented a claim to Company for loss resulting under the bond aforesaid in the total sum of $14,115.57, including the abovementioned $8,226.38, which Company paid over to Maryland.

"6. Concurrently with said payment of $14,-115.57, Maryland entered into an agreement with Company authorizing the latter to demand of all guaranteeing endorsers, acceptors or cashers of said drafts that the amount of such drafts be paid over to it and to bring actions and proceedings against any banks, persons, firms or corporations on the drafts respectively accepted, cashed or endorsed by any of them and assigning all such claims to it and subrogating to it all rights the former might have for recovery against said accepting, cashing or endorsing banks or persons.

"7. Company, as assignee and in its own right, alleges that the above described actions of Eades were beyond the scope of his authority and fraudu-

lent in nature and fact and it is entitled to recover of and from him the sum of $8,226.38.

"8. Company, as assignee and in its own right, claims and charges that Bank had no authority to accept and cash the drafts aforesaid and charge the same to the account of Maryland or to demand or receive payment thereof from Maryland.

"9. Company, as assignee and in its own right, claims and charges that Bank, by accepting, cashing and endorsing the drafts presented it by Eades guaranteed the genuineness of and the authority to make endorsement of payees' names on said drafts to all subsequent holders thereof and, in particular, to Maryland as drawee or payor and also thus agreed to save drawee or payor harmless in the event that said respective endorsements were, as they are, defective or irregular and, therefore, is liable to Company, as assignee and in its own right, and Company is entitled to recover from it the sum of $8,226.38.

"10. *At the time that Bank accepted, cashed and endorsed each of the respective drafts tendered it by Eades, it had full and actual knowledge that Eades was not the designated payee in each of said drafts and further had full and actual knowledge in each and every instance that the endorsement of the payees' signatures thereon was false and fraudulent and that Eades had no authority to affix said signatures of the designated payees as endorsees or to receive the sums evidenced by the respective drafts as payees and that when Bank so acted it was guilty of negligence and, therefore, is liable to Company, as assignee and in its own right, and Company is entitled to recover from it the sum of $8,226.38.*

"11. At the time that Eades presented said drafts to Bank, if it had obeyed the caveats imposed upon the reverse side of each of said drafts (referred to above as 'legend'), it would not have accepted or cashed same and neither Maryland nor Company would have suffered any loss; hence, it is liable to Company, as assignee and in its own right, for the loss sustained in the sum of $8,226.38.

"Wherefore, plaintiff, United States Fidelity and Guaranty Company, as assignee and in its own

right, demands judgment against defendant, William A. Eades, III, or against defendant, Princeton Bank and Trust Company, or against both in the sum of $8,226.38, and further demands and requests that the Clerk of this Court or the Court appoint a discreet and competent attorney at law as guardian ad litem for defendant, William A. Eades, III, a convict, and this action proceed against said Bank, Eades and guardian ad litem as provided and permitted by law and set forth herein." [Emphasis supplied]

The trial court held that the checks involved in this controversy were made payable to fictitious persons in each instance and under the law applicable thereto the checks were bearer instruments and were negotiable instruments by delivery, that the Bank's endorsement was irrelevant and any negligence with regard to proper endorsement in the cashing of these drafts was immaterial as to the Bank's liability. The facts set out in the complaint quoted herein support the findings of the trial court on the questions of; law relative to the checks being bearer instruments negotiable on delivery, to the effect that the defendant Bank is not chargeable with negligence in connection with cashing bearer instruments, and that the endorsement has no effect in such instance. Code, 46-1-9, as amended; Annot. 118 A. L. R. 15, 18; *South Carolina National Bank of Charleston* v. *Lake City State Bank,* (S. C.) 143 S. E. 2d 584; *Pennsylvania Co.* v. *Federal Reserve Bank of Philadelphia,* 30 F. Supp. 982; *United States* v. *Bank of America,* 47 F. Supp. 279, (new trial on other grounds, 51 F. Supp. 751); *Childs* v. *Empire Trust Co.,* 54 F. (2d) 981, (CCA 2); *American Hominy Co.* v. *Millikin Nat. Bank,* 273 F. 550, (S. D. Ill.); *Ellis Weaving Mills* v. *Citizens & Southern Nat. Bank,* 184 F. 2d 43, (CCA 4).

Although a draft or check made payable to a fictitious person, which fact is known to the maker, is a bearer instrument and can be negotiated on delivery, it is governed also as to other matters by the same Negotiable Instruments Law and the Bank in this case, in order to be a holder in due course, must have been a bona fide purchaser for value without notice. Code, 46-4-2. When the

bearer instruments involved in the instant case were delivered to the Bank and it paid Eades on each of them it took the negotiable instruments, even if bearer instruments, free from defenses only if it had no notice of any infirmities or defects in title in connection therewith. 10 C. J. S., Bills and Notes, § 234; Code, 46-4-2 and 7. The general rule is that a purchaser takes with notice only where he has actual knowledge, or knowledge of the facts which make it bad faith on his part not to inquire or discover evidence of inequities, and certain facts or circumstances may or may not constitute notice, actual or imputed, because of the failure to inquire. Code, 46-4-6; 10 C. J. S., Bills and Notes, § 325. Consequently, if the defendant Bank had actual knowledge that Eades did not have authority under the circumstances involved herein to sign the drafts as the drawer and to make them payable to fictitious persons and to endorse them in order to receive the sums of money paid by it to him in each case, and if it cashed said drafts with such knowledge it would not be a holder in due course and could not recover from the drawee if it sued on such instruments as a holder in due course, because, although it was a purchaser for value, it was not a purchaser in good faith and without notice. By the same token, it could be sued on implied contract for money had and received, in such case where the Bank cashed the checks with knowledge of such matters. Code, 46-4-2; 11 Am. Jur. 2d, Bills and Notes, §§ 437, 438, 443.

The complaint contains allegations that the defendant Bank had full and actual knowledge that the drafts in question were fraudulent and that Eades had no authority to receive the moneys paid by the Bank to him on said drafts. These allegations, if proved, would constitute notice on the part of the Bank of the fraudulent scheme in cashing the drafts and obtaining the proceeds therefrom on the part of Eades. It would therefore not have obtained the instruments in good faith and would not be a holder in due course, and recovery could be had against the Bank. *Christian* v. *California Bank et al.*, 208 P. 2d 784. Therefore, the action of the trial court in dismissing the action under Rule 12 (b) (6) for the failure of the pleading to state

a claim upon which relief could be granted was erroneous and it would appear that the allegations in the complaint with regard to the facts are all that can be considered by this Court in this appeal. It should be noted, however, that an attempt was made to have the trial court consider matters outside the pleading in the disposition of this case. If no genuine issue of any material fact is contained in such matter outside the pleadings presented to and not excluded by the court, the motion should not be treated as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12 R. C. P., but should be treated as a motion for summary judgment under Rule 56 R. C. P. If a summary judgment is entered under Rule 56 R. C. P. it is a dismissal with prejudice; whereas, a judgment sustaining a motion to dismiss under Rule 12 (b) R. C. P. for the failure to state a claim upon which relief could be granted is not a dismissal with prejudice.

However, it appears from the record submitted to this Court that the matters submitted to the trial court by stipulation outside the pleadings contained an issue of fact which may be material in the disposition of this case, and therefore it could not be disposed of by summary judgment under Rule 56 R. C. P. and a trial on the merits should be held. *Aetna Casualty & Surety Co.* v. *Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S. E. 2d 770; *Hatten* v. *Mason Realty Company*, 148 W. Va. 380, 135 S. E. 2d 236.

The defendant's motion to dismiss the process or quash the return of service because the process provided for only 20 days in which to answer is without merit. The summons was served on the president of the defendant Bank, in accordance with Rule 4 (d) (5) R. C. P. and not on an agent or attorney in fact authorized by appointment or by statute to receive or accept service on behalf of the defendant which would allow 30 days in which to answer under Rule 12 (a), and although the trial court did not specifically rule on this motion inasmuch as it sustained defendant's motion to dismiss because the complaint failed to state a cause of action, it would automatically overrule

the defendant's motion to dismiss for insufficiency of process.

There is also no merit to plaintiff's contention that its motion for default judgment should be granted because the defendant failed to appear, plead or otherwise defend the action as to the averments of negligence set forth in the complaint. The motion to dismiss under Rule 12 (b) may be made before a responsive pleading and under Rule 12 (a) such motion postpones the necessity of pleading until the motion is disposed of; if successful, no answer would be necessary. As heretofore stated, the plaintiff cannot recover on the grounds of negligence on the part of the defendant Bank herein, because the negotiable instruments involved are bearer instruments and any negligence, even gross negligence, of the Bank, if presented, would not allow recovery as a matter of law. However, it may be evidence of bad faith and material as bearing on the question of good faith relative to notice. 10 C. J. S., Bills and Notes, § 324 at page 819; *Page* v. *W. F. Hallam & Co.*, 212 Ill. App. 462; *Fidelity Trust Co.* v. *Mayhugh*, 268 F. 712, (CCA 5); *Kuolt* v. *Canright*, 202 Ill. App. 502; *West* v. *First Baptist Church of Taft*, 71 S. W. 2d 1090, 123 Tex. 388, reversing Civ. App. 42 S. W. 2d 1078.

The plaintiff relies on the Bank Collection Code, West Virginia Code 31-4A-4, as amended, relative to collections between banks in connection with its right to recovery against the Bank. This section is not applicable to the instant case by virtue of the fact that it is a bearer instrument as a result of a fictitious payee known to be fictitious by the maker thereof not drawn on a bank and is governed by Code, 46-1-9, as amended. See Code, 31-4A-15 and 16, as amended.

For the reasons stated herein, the judgment of the Circuit Court of Mercer County sustaining the defendant's motion to dismiss the action because the complaint fails to state a claim against it upon which relief can be granted, and then dismissing the action, is reversed, and the case is remanded with directions to set it down for trial on the merits after the defendant, in accordance with the provi-

sions of Rule 12 R. C. P. has timely served its answer on the plaintiff pertaining to the issue as to whether the defendant had knowledge or notice of the fraudulent scheme and paid moneys to Eades in connection therewith.

*Judgment reversed; remanded with directions.*