736 S.E.2d 91

**George A. GRAYIEL, Jr., Plaintiff Below, Petitioner**

v.

**APPALACHIAN ENERGY PARTNERS 2001–D, LLP, Appalachian Energy Partners 2001–S, LLP, Appalachian Energy Partners 2001 II, LLP, Appalachian Energy Partners 2003 S–II, LLP, Burning Springs Energy Partners 1999, LLP, Burning Springs Energy Partners 2000, LLP, Burning Springs Energy Partners**

**2001–S, LLP, Cherokee Energy Company, Haynes # 2 Energy Partners 2001, LLP, Martin Twist Energy Co., LLC, Martin R. Twist, Drew Thomas, Tammy Curry Twist and Todd Pilcher Defendants Below, Respondents.**

No. 11–0371.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 16, 2012.

Decided Nov. 15, 2012.

Jeffrey K. Phillips, Esq., Robert L. Bailey, Esq., Steptoe & Johnson, PLLC, Lexington, KY, for the Petitioner.

Mark Goldner, Esq., Maria W. Hughes, Esq., Hughes & Goldner, PLLC, and Scott H. Kaminski, Balgo and Kaminski, L.C., Charleston, WV, for the Respondents.

Lisa A. Hopkins, Esq., General Counsel, Shane P. McCullough, Esq., Associate Counsel, West Virginia State Auditor Office and Commissioner of Securities, Charleston, WV, for Amicus Curiae.

PER CURIAM:

The instant case is before the Court upon the appeal of George Grayiel, Jr., Petitioner, from a February 1, 2011, order of the Circuit Court of Putnam County, West Virginia, granting the Respondents'[1] Motion for Summary Judgment dismissing his lawsuit ruling that arbitration clauses in Petitioner's investment contracts are not unconscionable and are enforceable.[2] Petitioner alleges

1. The Respondents represented in the instant appeal include Appalachian Energy Partners 2001–D, LLP; Appalachian Energy Partners 2001–S, LLP; Appalachian Energy Partners 2001 II, LLP; Appalachian Energy Partners 2003 S–II, LLP; Burning Springs Energy Partners 1999, LLP; Burning Springs Energy Partners 2000, LLP; Burning Springs Energy Partners 2001–S, LLP; Cherokee Energy Company; Haynes #2 Energy Partners 2001, LLP; Martin Twist Energy Company, LLC; and Martin R. Twist. An appearance has not been entered on behalf of the remaining Respondents Drew Thomas, Tammy Curry Twist, and Todd Pilcher.

2. We wish to acknowledge the Amicus brief filed by Glen B. Gainer, III, West Virginia Auditor and

that the circuit court erred in: 1) requiring him to prove that the arbitration clauses in the parties' agreements are independently enforceable under the Federal Arbitration Act ("FAA"), rather than applying West Virginia law and finding those agreements unenforceable *en toto*; 2) failing to find the agreements' arbitration clauses independently unenforceable, either because they are unconscionable or because they were fraudulently procured; 3) refusing to find Respondent Martin Twist's deposition testimony an unresponsive and evasive effort to deprive Petitioner of any opportunity to conduct meaningful discovery; and 4) failing to enforce Respondent Twist's offer to repay Petitioner. Based upon the record before us, the arguments of the parties, and the applicable precedent, we find that the circuit court's order lacks the findings of fact and conclusions of law necessary for this Court to conduct a meaningful appellate review. Accordingly, we reverse the decision of the circuit court and remand this matter for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 2000, Martin Twist and Drew Thomas solicited Mr. Grayiel to invest in certain companies owned by Twist for the purpose of drilling for natural gas in and around Kanawha County, West Virginia. Petitioner entered into the first of twenty subscription and/or partnership agreements [3] with the Respondents in which the Petitioner purchased investment units in the natural gas exploration program. Over the next two years Petitioner invested approximately $886,000 with the Respondents.

Each one of these agreements contained an arbitration clause that, *inter alia*, stated that both parties were bound to arbitrate their disputes. When Petitioner signed these agreements, he was not represented by counsel. At the beginning of the relationship, Petitioner received some profits from these investments. However, production allegedly diminished and the money flow ceased. The relationship between the parties soured and Petitioner filed suit against Respondents on November 17, 2008. The Complaint asserts violations of the West Virginia Securities Act alleging that respondents were selling unregistered securities, respondents were not permitted to sell securities in West Virginia, the terms were unfair, the funds were not used for the purposes for which they were solicited, and the purchases were induced by fraud and misrepresentation. The Complaint also asserts claims of lost opportunity, unjust enrichment, conversion, fraud and misrepresentation, negligence, intentional infliction of emotional distress, and a right of rescission. The Complaint seeks compensatory and punitive damages and attorney's fees.

On January 9, 2009, Respondents filed a motion to dismiss alleging that the circuit court did not have jurisdiction to resolve the dispute due to the arbitration clauses contained in the agreements. On February 13, 2009, Petitioner filed Plaintiff's Response in Opposition to Defendant's Motion to Dismiss arguing that there remained factual ques-

---

Commissioner of Securities, in support of Petitioner. Auditor Gainer argues that the arbitration provisions should be found unconscionable. The Auditor reports that during the past eight years, his office has investigated the activities of Respondent Twist and his companies multiple times. The Auditor found numerous violations of the West Virginia Uniform Securities Act, including fraud and commingling of investor funds, and the offer and sale of unregistered investments. The Auditor issued four cease and desist orders to Twist and his companies over a six year period. The Auditor reports that securities regulators in at least nine states have taken action against Twist, in addition to countless private actions. The Auditor found that Twist's

"scheme" includes the use of contract documents to create a sense of legitimacy to the target victims, and that Twist used arbitration clauses as a shield to circumvent accountability in the legal system and to deny his victims access to justice by making the cost of arbitration prohibitive. The Auditor reports that Twist merged and/or withdrew over $1.5 million in investor funds into one or two of his shell corporations, which use cannot be attributed to the money's purpose.

3. Petitioner allegedly signed fifteen separate subscription agreements and five separate partnership agreements.

tions as to the enforceability of the agreements and the arbitration clauses within them. The circuit court ordered that Petitioner be allowed an opportunity to conduct discovery into the circumstances surrounding the signing of various contracts between the parties to develop a sufficient factual record to support Petitioner's claim of unconscionability. Thereafter, in a Motion Denying in Part and Granting in Part Defendant's Motion for Protective Order, the circuit court more specifically ruled that discovery was limited to the issue of unconscionability of the arbitration and forum selection clauses of the parties' agreements and the facts and circumstances leading thereto.

Following discovery, Petitioner filed his Supplemental Response in Opposition to Defendant's Motion to Dismiss asserting that the Respondents failed to comply with the Court's order and thwarted Petitioner's discovery efforts by refusing to meaningfully answer most of Petitioner's questions in deposition. Petitioner also argued that the parties agreed that state, rather than federal, law would govern all disputes arising under the subscription agreements. Specifically, Petitioner argued that under a choice of law analysis, West Virginia law, rather than Kentucky or Indiana law, applied because West Virginia had the most significant connection to the parties and contracts.

On November 1, 2010, Respondents filed Defendants' Response to Plaintiff's Supplemental Response in Opposition to Defendant's Motion to Dismiss arguing that the threshold issue before the Court was whether the arbitration and forum selection clauses in the agreements were valid and enforceable, and that the Petitioner had not proven that the arbitration clause was unconscionable, thus the case should be dismissed for lack of jurisdiction. On February 1, 2011, the circuit court entered an order granting summary judgment to the Respondents finding that the arbitration provisions in the fifteen subscription agreements and five partnership agreements were not unconscionable. Following that order, Petitioner filed the instant appeal.

## II.

### STANDARD OF REVIEW

Herein, the circuit court granted summary judgment in favor of Respondents finding that because the court did not have jurisdiction to hear the case, it should be dismissed for arbitration.[4] This Court has held that:

> [t]his Court will preclude enforcement of a circuit court's order compelling arbitration only after a de novo review of the circuit court's legal determinations leads to the inescapable conclusion that the circuit court clearly erred, as a matter of law, in directing that a matter be arbitrated or that the circuit court's order constitutes a clear-cut, legal error plainly in contravention of a clear statutory, constitutional, or common law mandate.

Syl. Pt. 4, *McGraw v. American Tobacco Company*, 224 W.Va. 211, 681 S.E.2d 96 (2009). Likewise, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We have repeatedly held that under Rule 56(c) of the West Virginia Rules of Civil Procedure, " ' "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1,

---

**4.** The circuit court considered Respondents' Motion to Dismiss as a Motion for Summary Judgment to the extent that matters outside the pleadings were considered. We have long held that: "Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith...." Syllabus Point 4, *United States Fidelity & Guaranty Co. v. Eades*, 150 W.Va. 238, 144 S.E.2d 703 (1965). Syl. Pt. 1, in part, *Poling v. Belington Bank, Inc.*, 207 W.Va. 145, 529 S.E.2d 856 (1999) (Emphasis added). Therefore, we will consider the issues presented in this appeal under a summary judgment standard of review.

*Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

■ With respect to the sufficiency of a circuit court's summary judgment order, this Court held in syllabus point three of *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997) that:

> Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

As further explained below, we find that the summary judgment order in this case falls short of the standard articulated in *Lilly.*

## III.

## ANALYSIS

The Petitioner presents the following four assignments of error: 1) the circuit court erred in requiring Petitioner to prove that the arbitration clauses in the parties' agreements are independently enforceable, rather than applying West Virginia law and finding those agreements (and their arbitration clauses) unenforceable *en toto*; 2) the circuit court erred in failing to find the agreements' arbitration clauses are independently unen-

forceable, either because they are unconscionable or because they were fraudulently procured; 3) the circuit court erred in refusing to find Respondent Martin Twist's deposition testimony an unresponsive and evasive effort to deprive Petitioner of any opportunity to conduct meaningful discovery; and 4) the circuit court erred in failing to enforce Respondent Twist's offer to repay the Petitioner. To the extent that we resolve this appeal on the first two assignments of error, we need not address the latter two issues.

### A. Choice of Law

Petitioner argues that the arbitration clauses in the contracts that Petitioner signed indicate a choice of state law, not federal law. Petitioner asserts that although the arbitration clauses variously specified Kentucky and Indiana law, this case has no connection to Indiana whatsoever and only a tenuous, remote connection to Kentucky. Thus, Petitioner contends that West Virginia's forum rules on choice of law require application of West Virginia state law, not Kentucky or Indiana law, to the analysis of arbitrability of Petitioner's claims. Petitioner alleges that by requiring him to prove that the arbitration clauses were independently unenforceable, a requirement that West Virginia law allegedly does not impose, the circuit court implicitly applied the FAA.[5] Petitioner contends that West Virginia arbitrability law is unhampered by the FAA's severability[6] and neu-

---

**5.** Petitioner cites a string of cases in a footnote that appear to stand for the proposition that "in circumstances where the parties have agreed to arbitrate in accordance with state law, the FAA does not apply, even where interstate commerce is involved." *See, e.g., Tortoriello v. Gerald Nissan of N. Aurora, Inc.,* 379 Ill.App.3d 214, 317 Ill.Dec. 583, 882 N.E.2d 157, 168–69 (2008); *Rhodes v. Consumers' Buyline, Inc.,* 868 F.Supp. 368, 373 (D.Mass.1993) ("Where . . . parties to a contract containing an arbitration clause have specified that the contract is governed by the law of a particular jurisdiction, a federal court generally may apply the law of the specified jurisdiction, not federal law, to determine the applicability of the arbitration provision."); *Duffens v. Valenti,* 161 Cal.App.4th 434, 74 Cal.Rptr.3d 311, 324 (2008)(holding that "[w]here an arbitration provision contains California choice-of-law language, the parties' intent is inferred that state law will apply for resolving motions to compel arbitration"; holding under state arbitration law

that arbitration law is not separable from the entire agreement; and affirming trial court's order denying "motion to compel arbitration"; holding under state arbitration law that arbitration clause was not separable from the entire agreement; and affirming trial court's order denying motion to compel arbitration).

**6.** In *Brown v. Genesis Healthcare,* 228 W.Va. 646, 675, 724 S.E.2d 250, 279 (2011) ("*Brown I* "), a case involving an arbitration agreement governed by the FAA, this Court explained that the doctrine of severability is a pleading standard that holds that "only if a party explicitly challenges the enforceability of an arbitration clause within a contract is a court then permitted to consider challenges to the arbitration clause." This Court also stated in *Brown I* that "the doctrine of severability means this: if a party challenges the enforceability of the entire contract (including the arbitration clause)—that is, the

trality requirements and is distrustful of form arbitration clauses. Petitioner asserts that the circuit court mistakenly relied on Exhibit A to Respondent's motion to dismiss, which purports to be an amendment to one or possibly more of the subscription agreements that explicitly requires that "[t]he Federal Arbitration Act, 9 U.S.C. Secs. 1–16, not state law, shall govern the arbitrability of all Disputes. The law of the State of Indiana shall govern the construction and interpretation of this Agreement, subject to the foregoing provision regarding the Federal Arbitration Act." Petitioner argues that Exhibit A is not a part of anything that he ever signed, but appears instead to be a document fashioned *ad hoc* to support Respondent's motion. Petitioner submits that the agreements that he and the Respondents actually signed did not contain any such language, and specifically they did not require arbitrability under the FAA. Petitioner contends that his counsel contacted counsel for Respondents and requested the entire document from which Exhibit A was taken. However, to date, Respondents have been unable to locate that document.

■ Conversely, Respondents argue that the amendment which specifies that the FAA, not state law, shall govern arbitrability is not a fabrication. Respondents assert that although they were unable to locate full and complete copies of each of the twenty agreements executed by Petitioner and Respondent Twist at the outset of litigation, Petitioner had full and complete copies of all twenty agreements and shared a copy of the same with Respondents' counsel during Twist's deposition. Respondents assert that Petitioner testified that he was aware of the amendment and its terms, the sole purpose

of which was to allegedly modify the arbitration agreements to the degree required under West Virginia law after this Court's decision in *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002), which prohibited arbitration agreements from disallowing punitive damages. Respondents allege that Petitioner never made any allegation of the amendment's impropriety before the circuit court and thus, this issue was not addressed below. Additionally, Respondents argue that Petitioner's lengthy assertions regarding the fact that state law instead of federal law applies are of no moment because the FAA specifically prohibits any state policy that would "single out" an arbitration clause for invalidation. Respondents assert that any set of state arbitrability rules that are in conflict with the terms of the FAA are trumped by federal law. *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Southland v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Respondents also contend that West Virginia law strictly limits the power of state courts in making determinations regarding arbitration clauses, holding that "when a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2, *State ex rel. TD Ameritrade v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

Petitioner replies that no one is sure from where the purported amended arbitration clause came, as Respondents proffered this amendment into the record and it pertained

---

party does not sever the arbitration clause from the rest of the contract and make a 'discrete challenge to the validity of the arbitration clause'—then the court is completely deprived of authority and only an arbitrator can assess the validity of the contract, including the validity of the arbitration clause." *Id.*

Subsequently, in Syllabus Point 4 of *State ex rel. Richmond American Homes v. Sanders*, 228 W.Va. 125, 717 S.E.2d 909 (2011), this Court held that:

Under the Federal Arbitration Act, 9 U.S.C. § 2, and the doctrine of severability, only if a

party to a contract explicitly challenges the enforceability of an arbitration clause within the contract, as opposed to generally challenging the contract as a whole, is a trial court permitted to consider the challenge to the arbitration clause. However, the trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause. If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract.

to only one of the twenty contracts, leaving the other nineteen contracts unamended.[7] Petitioner also alleges that any amended agreement is unenforceable because the contracts all required amendments only to be a writing signed by both parties and Petitioner never signed an amendment, and there was no separate consideration given for any alleged amendment.

■ When we review the appendix and supplemental appendix submitted by the parties and the record of the circuit court below, it is readily apparent that this threshold question of "what law applies" (federal law, Indiana law, Kentucky law, or West Virginia law) was never addressed by the circuit court. Although Petitioner raised the issue in its Response to Respondents' motion to dismiss that state law, not federal law, applied to the issue of arbitrability pursuant to the terms of the subscription and partnership agreements, the circuit court engaged in no analysis of this issue. Rather, the circuit court wholly skipped this threshold issue and simply analyzed the enforceability of the arbitration provision itself under West Virginia law regarding unconscionability.[8] The terms of the separate and various contracts, some of which allegedly agreed to apply Indiana law, others which allegedly agreed to apply Kentucky law, and the purported amendments which allegedly stated that the FAA applied, were never examined or even acknowledged by the circuit court. We are unable to determine from a review of the record exactly how many of the alleged twenty subscription agreements and partnership agreements were submitted to the circuit court. The record reflects that the subscription agreements were allegedly attached to the Petitioner's Complaint below, but the copy of the Complaint within the appendix submitted to this Court contains none of the exhibits that were allegedly attached to the Complaint below.[9] It is necessary for the circuit court to examine each of the separate subscription and partnership agreements and any purported amendments submitted by the parties below and make the requisite findings of fact and conclusions of law regarding the threshold issue of which law applies to the issue of arbitrability.[10] Perhaps the circuit court may ultimately determine that under any of the above-stated laws, the end result is the same. However, given the limited record before this Court regarding the applicable subscription and partnership agreements and amendments and the fact that the circuit court did not address this issue which was squarely before it for determination, it is a fruitless effort for this Court to engage in an analysis of this issue until the circuit court has made findings of fact and conclusions of law facilitating appellate review.

## B. Unconscionability

Next, Petitioner argues that the arbitration provisions that he agreed to are unenforceable because they are unconscionable

**7.** Petitioner also disputes whether the above-noted pages in the appendix purporting to be an amendment were part of a December 18, 2003, amendment, which was separately referenced by the Respondents. Indeed, the appendix submitted by the parties contains two different short excerpts of contractual language purporting to be contract amendments. However, neither excerpt references the specific subscription agreement it is intended to amend.

**8.** The order reflects that the circuit court implicitly applied the FAA by stating "[b]asically, Mr. Grayiel averred that the arbitration clause was independently unenforceable because it was unconscionable. This Court permitted limited discovery with regard to the question of the arbitration clause."

**9.** Furthermore, while Petitioner submitted certain subscription agreements to this Court in its supplemental appendix filed August 12, 2011, it appears that only seven of the twenty contracts have been submitted.

**10.** Herein, Petitioner asserts that the circuit court required him to prove that the arbitration clauses were unenforceable independent from the rest of the contract (i.e. applying the doctrine of severability under the FAA), instead of allowing him to prove under West Virginia state law that the entire agreements were void *en toto*. However, Petitioner fails to make a coherent and thoroughly briefed argument as to what actual effect the application of "West Virginia state rules of arbitrability" (not enforceability), if indeed there are such existing state rules, would have on the outcome of this case. Defendants equally fail to thoroughly brief this issue with clarity. On remand, the circuit court should require the parties to provide a more thorough analysis of this issue prior to issuing a choice of law ruling.

and were obtained fraudulently. Thus, Petitioner asserts that circuit court erred in finding that the arbitration provisions were not unconscionable. First, Petitioner argues that the arbitration clauses are procedurally unconscionable because they contained boilerplate, take-it-or-leave-it language prepared by Twist. Additionally, Petitioner asserts that Twist is a "repeat player" at arbitration, giving him an unfair advantage over petitioner, who has never had any dispute arbitrated.

Second, Petitioner argues that the arbitration clauses are substantively unconscionable for multiple reasons. Petitioner contends that several of the contracts require arbitration to be conducted in the remote jurisdiction of Indiana. Petitioner asserts that Twist picked Indiana because he knew it would be inconvenient for his victims to seek restitution. Petitioner contends that a specific arbitral forum must allow for the effective vindication of a claim, otherwise, the arbitration clause would conflict with one of the purposes of arbitration, i.e., providing a suitable alternative forum for plaintiff's claims.

Petitioner also asserts that the arbitration clauses deny petitioner the opportunity to seek several important claims and remedies, including punitive damages and statutory damages under securities acts designed to prevent the fraudulent and predatory sale of securities. *See Mortg. Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351 (Ky.Ct. App.2008) (invalidating an arbitration clause that forced plaintiffs to forego substantial statutory and other rights). Petitioner contends that the circuit court erroneously found that all remedies available in court are available in arbitration—but that error is understandable, inasmuch as the court was relying on arbitration language that was apparently created for the court's benefit.

Likewise, Petitioner avers that the cost of arbitration will effectively keep petitioner from seeking any remedy. Petitioner argues that in arbitrations involving other of his victims, Twist has done everything possible to increase costs and prolong the process. Petitioner states that Twist has made him a poor man who cannot afford this. Lastly, Petitioner asserts that inadequate procedures will be available in arbitration, such as discovery. Petitioner will need civil discovery to learn the history and extent of Twist's fraudulent misrepresentations.

Petitioner contends that the arbitration clauses solely benefitted Twist. Petitioner had only one obligation, to give Twist money, an obligation that he performed when the contracts were signed. Petitioner argues that at no point could he possibly "breach" any obligation to Twist. However, Twist had statutory, contractual, fiduciary, and common-law duties to petitioner before and during performance of the agreements. Petitioner asserts that the only possible dispute that could ever arise between the parties would be by him against Twist.

Moreover, Petitioner claims that unconscionability is not the only reason an arbitration clause can be held unenforceable. "[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conlkin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Petitioner claims that Twist fraudulently induced petitioner into agreeing to arbitration. Petitioner avers that he asked Twist if Twist, Thomas, or Twist's other agents had any legal problems. Twist said they had not, which was very false and was undoubtedly calculated to lure in petitioner. Petitioner also avers that he asked Twist about the arbitration clauses and Twist explained that unsatisfied investors could still go to court.

In its brief order granting summary judgment, the court found insufficient evidence to conclude that one party had grossly inadequate bargaining power. The circuit court found that while the bargaining was unequal, it was not grossly so. The circuit court found that Petitioner did not "feel" as though he had inadequate bargaining power because he signed twenty contracts with Twist over a two year period. The circuit court found that although Petitioner was not represented by counsel, he had ample time to seek counsel's advice before signing, there is no allegation that he was pressured into signing, and he signed on his own free will. The circuit

court also found that the arbitration clause is not unreasonably favorable because the terms apply equally to both parties and all remedies available in circuit court, including punitive damages, are available in arbitration. The circuit court also found that the parties were bound to arbitrate in Jeffersonville, Indiana, and that although it might be inconvenient for both parties to arbitrate there, it did not prevent one side from seeking arbitration.

 It is important to note that at the time this appeal was filed and briefs were submitted, the circuit court and the parties did not have the benefit of this Court's most recent opinions in *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011) ("*Brown I*"); *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012) ("*Brown II*"); *Richmond American Homes v. Sanders*, 228 W.Va. 125, 717 S.E.2d 909 (2011); and *Dan Ryan Builders v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012). In syllabus point 4 of *State ex rel. Richmond Homes*, this Court held that:

> Under the FAA and the doctrine of severability, only if a party to a contract explicitly challenges the enforceability of an arbitration clause within the contract, as opposed to generally challenging the contract as a whole, is a trial court permitted to consider the challenge to the arbitration clause. However, the trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause. If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract.

228 W.Va. 125, 717 S.E.2d 909.[11] In *Brown I*, we said that the "doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written."

Syl. Pt. 12, in part, *Brown I*, 228 W.Va. 646, 724 S.E.2d 250. "Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." Syl. Pt. 1, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986).

 In Syllabus Point 16 of *Brown I*, we also stated:

> "If a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result."

228 W.Va. 646, 724 S.E.2d 250. "Under West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Brown I*, 228 W.Va. 646, 724 S.E.2d at 285. "Procedural and substantive unconscionability often occur together, and the line between the two concepts is often blurred. For instance, overwhelming bargaining strength against an inexperienced party (procedural unconscionability) may result in an adhesive form contract with terms that are commercially unreasonable (substantive unconscionability)." *Id.*

 In Syl. Pt. 20 of *Brown I*, we explained that:

> A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.

228 W.Va. 646, 724 S.E.2d 250. We set forth the following guidelines for determining pro-

---

11. "[A]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." Syl. Pt. 3, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986). "The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." Syl. Pt. 12, in part, *Brown I*, 228 W.Va. 646, 724 S.E.2d 250 (2011).

cedural unconscionability in Syllabus Point 17 of *Brown I:*

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

*Id.* "Procedural unconscionability often begins with a contract of adhesion." *Richmond Homes,* 228 W.Va. at 125, 717 S.E.2d at 921. In Syl. Pt. 18 of *Brown I,* we stated that:

> A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.

228 W.Va. 646, 724 S.E.2d 250. As we recognized in *State ex rel. Dunlap v. Berger,* "[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 557, 567 S.E.2d 265, 273 (2002) (quoting *American Food Management, Inc. v. Henson,* 105 Ill.App.3d 141, 61 Ill.Dec. 122, 434 N.E.2d 59, 62–63 (1982)), cert. denied, 537 U.S. 1087, 123 S.Ct. 695, 154 L.Ed.2d 631 (2002).

We offered guidelines for analyzing substantive unconscionability in Syllabus Point 19 of *Brown I:*

> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

228 W.Va. 646, 724 S.E.2d 250. If an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable. As the United States Supreme Court recognized, "[t]he existence of large arbitration costs could preclude a litigant ... from effectively vindicating her ... rights in the arbitral forum." *Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). "[I]t is not only the costs imposed on the claimant but the risk that the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process." *Id.* In Syllabus Point 4 of *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 567 S.E.2d 265, we held that in an unconscionability analysis, a trial court could consider high costs that an arbitration agreement imposes and whether it might deter a litigant from pursuing a claim:

> Provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a pro-

vision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

Because the circuit court, if it makes a choice of law determination that West Virginia law should govern the issue of enforceability, did not have the benefit of the guidance provided in these opinions in assessing whether the arbitration clauses at issue are unconscionable, we remand the issue of unconscionability to the circuit court for consideration of the factors noted above.

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the circuit court's February 1, 2011, order granting summary judgment to Respondents and remand for further proceedings consistent with this Opinion.

**Reversed and Remanded.**