529 S.E.2d 856

William F. POLING and Candace
L. Jacques, Plaintiffs Below,
Appellants,

v.

BELINGTON BANK, INC., Dorothy F.
Poling, V.L. Smithson, A. Houston
Booth, Thomas M. Pitsenberger, Dor-
ward L. Matlick, Robert B. Reger, Barb-
our County Bank, and Other Unknown
Persons, Defendants and Third–Party
Plaintiffs Below, Appellees,

v.

Jeanne E. Poling, Executrix of the Es-
tate of Herman J. Poling, Jr., Third–
Party Defendant Below, Appellee.

No. 25336.

Supreme Court of Appeals of
West Virginia.

Submitted May 4, 1999.

Decided July 13, 1999.

Dissenting Opinion of Chief Justice
Starcher March 1, 2000.

David A. Sims, Esq., Debra Tedeschi Hall, Esq., Sims & Hall, Elkins, West Virginia and Dwight R. Hall, Esq., Elkins, West Virginia, Attorneys for Plaintiffs Below, Appellants.

Harry A. Smith, III, Esq., Jory & Smith, Elkins, West Virginia, Attorney for Belington Bank, Inc., Dorothy F. Poling, V.L. Smithson, A. Houston Booth, Thomas M. Pitsenberger, Dorward L. Matlick, and Robert B. Reger, Defendants and Third–Party Plaintiffs Below, Appellees.

Jerald E. Jones, Esq., West & Jones, Clarksburg, West Virginia, Attorney for Barbour County Bank, Defendant and Third–Party Plaintiff Below, Appellee.

H. Gerard Kelley, Esq., Philippi, West Virginia, Attorney for Jeanne Poling, Executrix, Third–Party Defendant Below, Appellee.

MAYNARD, Justice:

The appellants, William F. Poling and Candace L. Jacques, filed a declaratory judgment action in the Circuit Court of Barbour County, West Virginia, requesting that the court declare them to be the owners in fee simple of bank stock issued by Belington Bank, Inc.[1] and left to them by their grandfather in his will. The appellants' father, Herman Poling, Jr., following the death of his father and while acting as executor of his father's estate, had the bank stock issued in his name, not as the owner of a life estate but as the absolute owner. The circuit court determined that the Uniform Act for Simplification of Fiduciary Security Transfers, W.Va.Code §§ 31–4D–1 to 11, controls this case and, consequently, dismissed the action. During the pendency of the action, the appellants moved to amend their complaint, which request was denied by the court in its dismissal order.[2]

At the time of his death in 1967, Herman Poling, Sr. owned 20 shares of stock in the Belington Bank, Inc. Over the years, new stock issuances and stock splits increased the number of shares and the value of the stock dramatically.[3] Herman Poling, Sr. died testate. Paragraph Six of his holographic will

1. Belington Bank, Inc.'s holding company is Freedom Bancshares, Inc.

2. This case has a pending cross-claim filed by the Barbour County Bank against Belington Bank, Inc. and the individual purchasers and a pending third-party action filed by Belington Bank, Inc. and the individual purchasers against Jeanne E. Poling, Executrix of the Estate of Herman J. Poling, Jr. Neither of these actions are involved in this appeal.

3. The appellants believe there are now 4,000 shares of bank stock worth approximately $180,000.00.

reads as follows: "Sixth: I bequeath my bank stock in Belington Bank to my son Herman Poling, Jr. and at his death shall go to my granddaughter, if living, and grandson, William F. Poling." Thus, the will gave Herman Poling, Jr. a life estate in the bank stock with the remainder interest left to the testator's grandchildren. In January 1967, following his father's death, Herman Poling, Jr., acting as executor of his father's estate, requested and received from Belington Bank, Inc. a transfer of the shares of stock which was issued to him absolutely. The transfer was made pursuant to written consent from the Tax Commissioner.

Herman Poling, Jr. died of his own hand in June 1997. At that time, the appellants asked the bank to issue the shares of stock to them as fee simple owners. The bank directors and officers refused to issue the stock certificates, stating that the shares of stock no longer belonged to their father.

The appellants filed a declaratory judgment action, requesting that the circuit court declare them to be the owners of the bank stock and that the bank be directed to issue the shares in their names. The complaint alleges that their grandfather, in his will, left their father a life estate in his shares of Belington Bank stock and that at their father's death, they became entitled to the shares of stock. The complaint also alleges that the appellants' father, during his lifetime, sold or encumbered his life estate in several shares of the bank stock and that the individually named defendants and other unknown persons are the owners of the life estate, which estate extinguished at the time of their fathers' death.

Belington Bank, Inc. and the individual purchasers of the stock answered the complaint, stating that the complaint failed to state a claim upon which relief could be granted. The answer states that the appellants' claim, if any, is not against the appellees, but, rather, is against their father's estate for breaching his fiduciary duty while acting as executor. The individual purchasers answered that they are bona fide purchasers for value, without notice of adverse claims, as to the shares of stock they now own. The appellees raised the affirmative defenses of laches, statute of limitations and estoppel. The bank concluded, in its answer, that it could not issue any stock to the appellants—the stock had been sold by their father to bona fide third party purchasers for valuable consideration which presumably benefitted their father and his estate.

Belington Bank, Inc. and the individual purchasers filed a motion to dismiss the complaint pursuant to West Virginia Rule of Civil Procedure 12(b)(6). The bank asserted that Herman Poling, Jr. was responsible for the stock transfer, and the bank simply acted in accordance with his directions as the personal representative of his father's estate. The individual purchasers asserted the complaint made no allegation that they were anything but bona fide purchasers for value, without notice, at the time they acquired bank stock from Herman Poling, Jr.; therefore, no cause of action existed against them. The bank and the individual purchasers asserted that if the appellants have a cause of action, it is against their father's estate. On September 16, 1997, a notice of hearing was filed with the motion to dismiss stating that a hearing was set for October 16, 1997.

On October 14, 1997, the appellants answered the motion to dismiss to which they attached a motion to amend and an amended complaint. In their answer, they stated that they needed to conduct discovery in order to properly present their claims and that the amended complaint alleged claims upon which relief could be granted. They did not contend the original complaint stated a claim upon which relief could be granted.

The amended complaint alleged the following: the individual purchasers of the bank stock were not bona fide purchasers without notice and, thus, purchased only a life estate; the bank negligently breached its fiduciary duty to the appellants, the public and people who might be defrauded by Herman Poling, Jr. by failing to require him to post a sufficient indemnity bond when he stated "the shares were lost and caused them to be reissued"; the bank had notice that Herman Poling, Jr. owned a life estate but did not require notification of that fact to be placed on the stock certificates; the bank, through its officers and directors, was negligent in

the re-issuance, maintenance and control of the stock certificates; the appellees' conduct was fraudulent in the re-issuance and in the purchase of the stock; and Barbour County Bank holds shares of the Belington Bank stock which it wrongfully refuses to turn over to the appellants.

A hearing was held on October 16, 1997. The result of that hearing was that the parties were directed to brief the court on whether Belington Bank, Inc. acted properly in 1967 when it transferred the shares of stock to Herman Poling, Jr. After receiving and considering the briefs of the parties, the court entered an order on December 19, 1997 dismissing the complaint and denying the motion to amend. The order specifically states:

> Regardless of whether the Motion to Dismiss is considered under West Virginia Rules of Civil Procedure Rule 12(b)(6) or as a Motion for Summary Judgment under Rule 56 of said rules, the Court does not believe that the Belington Bank owed a duty to the Estate of Herman J. Poling, Sr. or any beneficiaries of said estate, including the Plaintiffs, to insure that the shares were transferred in accordance with the terms of the will.

> West Virginia Code 31–4D–3 authorized the Belington Bank to assume without inquiry that the assignment of the shares of stock to the fiduciary, Herman J. Poling, Jr., in his personal capacity, was within his authority and capacity and was not in breach of his fiduciary duties. Further, even though the Plaintiffs claim that Belington Bank, Inc. had notice of the will, which the Defendant Bank denies, Paragraph (c) of that section provides that even if the will was in the possession of the Bank, that the Bank would not be charged with notice of the will and neither would it have been bound to examine the will.

> The above cited Uniform Act was enacted in 1961 and the transfer of the shares of stock in question took place in 1967.

> Therefore, the Court concludes as a matter of law that Belington Bank, Inc. did not owe a duty to the Estate of Herman J. Poling, Sr., or the beneficiaries of said estate, including the Plaintiffs, to insure

that the shares of stock were transferred in accordance with the directives of the will. As a result, the action against Belington Bank, Inc., as well as the additional defendants for claims that arose due to the original transfer of stock, must fail.

> The Court does therefore GRANT the Defendants' Motion to Dismiss the declaratory judgment action of the Plaintiffs, and does now ORDER that the Plaintiffs' action against the Defendants be dismissed.

> Further, the Court has examined the amended complaint and finds that the amendment would also be precluded on the basis of lack of duty owed.

> The Court therefore DENIES the motion of the Plaintiffs to file an amended complaint.

It is from this order the appellants appeal.

On appeal, the appellants contend the circuit court erred by entering an order which dismissed the complaint and denied the motion to amend the complaint. They also argue the motion to dismiss should have been converted to a motion for summary judgment because the court considered the certificate of consent, the final settlement of accounts, and other documents. The crux of their argument is that the bank had notice of Herman Poling, Sr.'s will in 1967 and should, therefore, have issued their father a life estate in the bank stock. And in order to prove notice, they need to conduct discovery.

 The judge declined to determine whether this case was dismissed under Rule 12(b)(6) or under Rule 56. West Virginia Rule of Civil Procedure 12(b) states in pertinent part:

> (b) *How presented.*—Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted[.] ... *If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the plead-*

*ing are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all· material made pertinent to such a motion by Rule 56.* (Emphasis added).

This Court has also said that:

> Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith. If a summary judgment is entered under Rule 56 R.C.P. it is a dismissal with prejudice; whereas, a judgment sustaining a motion to dismiss under Rule 12(b) R.C.P. is not a dismissal with prejudice.

Syllabus Point 4, *United States Fidelity & Guaranty Co. v. Eades,* 150 W.Va. 238, 144 S.E.2d 703 (1965). In *Dunn v. Consolidation Coal Co.,* 180 W.Va. 681, 379 S.E.2d 485 (1989) (per curiam), the court's order stated that in ruling on the Rule 12(b)(6) motion to dismiss, the court considered the complaint, the memoranda submitted by the parties and the affidavit of the appellee. On appeal, this Court stated that when circuit courts consider matters outside the pleadings, such as affidavits, the motion should be treated as a Rule 56 motion for summary judgment rather than a Rule 12(b)(6) motion. In the case at bar, appellants attached one exhibit to the complaint, the will of Herman Poling, Sr. Attached to the motion to dismiss were the certificate of consent from the Tax Commissioner, a stock certificate reflecting stock was issued to Herman Poling, Jr. on January 23, 1967 and the final settlement of accounts of Herman Poling, Sr. The record also contains stock certificates, promissory notes, indemnity bonds, and affidavits. In his dismissal order, the judge specifically stated he "has now reviewed the pleadings, all memoranda of law, together with attached exhibits and affidavits."

■ It is clear that

[w]hile Rule 12(b)(6) and Rule 56 are closely related, and perhaps overlap in some respects, only matters contained in the pleadings may be considered on a motion to dismiss under Rule 12(b)(6). If matters outside the pleadings are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of as provided in Rule 56.

*West v. National Mines Corp.,* 168 W.Va. 578, 582, 285 S.E.2d 670, 674 (1981). (Citations omitted). In *Gunn v. Hope Gas, Inc.,* 184 W.Va. 600, 402 S.E.2d 505 (1991) (per curiam), the circuit court heard arguments and considered exhibits attached to the complaint while ruling on a Rule 12(c) motion for judgment on the pleadings. This Court concluded that consideration of documents which supported the pleadings converted the Rule 12(c) motion into a Rule 56 motion for summary judgment. Similarly, the court's consideration of documents outside the pleadings in the case at bar converted the Rule 12(b)(6) motion into a motion for summary judgment. Regardless of the label, the test for whether the motion for summary judgment should be granted is essentially the same as the "rather restrictive standard" applied when ruling on motions for judgment on the pleadings. *Id.,* 184 W.Va. at 603, 402 S.E.2d at 508 (citing *Calvert Fire Ins. Co. v. Bauer,* 175 W.Va. 286, 332 S.E.2d 586 (1985)).

■ "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). "A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syllabus Point 3, *id.*

The appellants argue summary judgment was improperly granted. In support of this

argument, they conclude the affidavits of their attorney, appellant Poling and his wife which they presented to the circuit court with their response to the motion to dismiss contain issues that can only be decided by discovery. Consequently, they say, these issues were not ripe for disposition by the court. The appellants do not in any way articulate what the issues might be; they merely make a blanket conclusion. In reviewing the affidavits, we find that essentially the appellants contend they need to determine why Belington Bank issued the shares of stock to Herman Poling, Jr. They say that in order to make that determination, they need to take depositions, have documents produced and interrogatories answered. They also say that counter-affidavits were filed showing issues of fact exist. Upon examination of the record, the only affidavits we find other than those submitted by the appellants are the affidavits of the bank President and CEO who both simply state they were not affiliated with the bank in 1967 and that their first knowledge of the will arose in 1997 when they were furnished with a copy.

█ The appellants do not contest the fact that their father presented himself to the bank in 1967 as the fiduciary of the estate of Herman Poling, Sr. and directed the bank to transfer the shares of stock to him. They argue instead, as they did to the circuit court, that the bank clearly had a duty to make sure the stock certificates were issued to the person entitled to receive them. They contend the bank knew in 1967 when the shares of stock were transferred to their father that he should have only been issued a life estate with the remainder interest issued to the two of them.[4] They conclude there is liability on behalf of the bank for failing to properly issue the stock because the bank must keep a correct list of stockholders under W.Va.Code § 31A–4–10, the common law recognizes a duty of corporations to issue stock to the right person[5] and corporations have a fiduciary duty to shareholders. The appellants have overlooked or ignored the statutory law which is dispositive of this issue. The Code sections which apply are discussed below.

Chapter 31A of the West Virginia Code, titled "Banks and Banking," clearly states that general corporation laws govern banking institutions. W.Va.Code § 31A–4–1(a) (1992) reads as follows: "The general corporation laws of the state, including the provisions of chapter thirty-one [§ 31–1–1 et seq.] of the code of West Virginia, shall govern banking institutions and the chartering thereof, except as otherwise provided in or where inconsistent with the provisions of this chapter."

Chapter 31 of the West Virginia Code is titled "Corporations." Article 4D is called the "Uniform Act for Simplification of Fiduciary Security Transfers." The following sections of Article 4D apply to the case *sub judice*. W.Va.Code § 31–4D–3 (1961) states:

Except as otherwise provided in this article, a corporation or transfer agent making a transfer of a security pursuant to an assignment by a fiduciary:

(a) May assume without inquiry that the assignment, even though to the fiduciary himself or to his nominee, is within his authority and capacity and is not in breach of his fiduciary duties;

(b) May assume without inquiry that the fiduciary has complied with any controlling instrument and with the law of the jurisdiction governing the fiduciary relationship, including any law requiring the fiduciary to obtain court approval of the transfer; and

(c) Is not charged with notice of and is not bound to obtain or examine any court record or any recorded or unrecorded document relating to the fiduciary relationship

---

4. When asked by the judge at the October 16, 1997 hearing what duty the bank or any corporation might have, the appellants' attorney answered, "The duty is to make sure that they transferred the stock to the right person."

5. The appellants cite *Snyder v. Charleston & S. Bridge Co.*, 65 W.Va. 1, 63 S.E. 616 (1909), as authority for this proposition. That is an old case which has been superseded by the Uniform Act for Simplification of Fiduciary Security Transfers, W.Va.Code §§ 31–4D–1 to 11, enacted in 1961.

or the assignment, even though the record or document is in its possession.

W.Va.Code § 31–4D–4 (1961) states:

A corporation or transfer agent making a transfer pursuant to an assignment by a fiduciary who is not the registered owner shall obtain the following evidence of appointment or incumbency:

(a) In the case of a fiduciary appointed or qualified by a court, a certificate issued by or under the direction or supervision of that court or an officer thereof and dated within sixty days before the transfer; or

(b) In any other case, a copy of a document showing the appointment or a certificate issued by or on behalf of a person reasonably believed by the corporation or transfer agent to be responsible or, in the absence of such a document or certificate, other evidence reasonably deemed by the corporation or transfer agent to be appropriate. Corporations and transfer agents may adopt standards with respect to evidence of appointment or incumbency under this subdivision (b) provided such standards are not manifestly unreasonable. Neither the corporation nor transfer agent is charged with notice of the contents of any document obtained pursuant to this subdivision (b) except to the extent that the contents relate directly to the appointment or incumbency.

W.Va.Code § 31–4D–6 (1961) reiterates the nonliability of the corporation or transfer agent by stating, "A corporation or transfer agent incurs no liability to any person by making a transfer or otherwise acting in a manner authorized by this article."

▮▮▮ These Code sections could not be clearer. Corporations, including banks, do not have a duty to determine whether a fiduciary is complying with a controlling instrument when transferring stock pursuant to an assignment by the fiduciary. Nor is a corporation bound to examine a document relating to the fiduciary relationship, even if the document is in the corporation's possession. We, therefore, hold that when bank stock is transferred pursuant to an assignment by a fiduciary who is not the registered

owner, the transfer is governed by the Uniform Act for Simplification of Fiduciary Security Transfers, W.Va.Code §§ 31–4D–1 to 11 (1961). Pursuant to the statutes, the bank is not charged with notice of any recorded or unrecorded document, even if the document is in the bank's possession. The bank is only required to obtain evidence of appointment or incumbency. Belington Bank, Inc. was under no obligation to second-guess Herman Poling, Jr.'s actions or to scrutinize Herman Poling, Sr.'s will to assure the personal representative complied with the will. The circuit court determined as a matter of law that Belington Bank, Inc. breached no duty to the appellants. We agree. At the same time, we recognize this is a harsh and perhaps even unfair result. However, it is one mandated by the Legislature and no challenge to the constitutionality of the statutes is made.[6]

▮▮▮ This would be the end of our inquiry were it not for the appellants' contention that the circuit court erred by denying their motion to amend the complaint. Amendments are controlled by West Virginia Rule of Civil Procedure 15, which states in pertinent part:

(a) *Amendments.*—A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

The circuit court denied the motion to amend on the basis of lack of duty owed to the appellants. The appellants contend they should have been allowed to amend their complaint because it appeared to them the circuit court believed a declaratory judgment action was not the proper way of bringing this action. They conclude "there is no basis as to why the [c]ircuit [c]ourt did not permit the amendment other than it was an abuse of

---

**6.** We do not suggest what our ruling would be were we to address this issue.

discretion." They argue the time frame. They say the case had been pending less than ninety days; the parties had exchanged pleadings; service on a third party defendant had been made, but no answer had been filed. Therefore, no party would have been prejudiced. The appellees argue the court correctly ruled the amendment was precluded on the basis of lack of duty owed because the appellants raised no issues in the amended complaint which are not covered by the applicable statutes.[7]

 The rule controlling amendments is explained in Syllabus Point 3 of *Employers Fire Ins. Co. v. Biser,* 161 W.Va. 493, 242 S.E.2d 708 (1978), which reads as follows:

A trial court should permit a party to amend his pleading once as a matter of course at any time before a responsive pleading is served and, unless the amendment will prejudice the opposing party by not affording him an opportunity to meet the issue, the refusal to permit such amendment will constitute reversible error.

*See also McDowell County Bd. of Educ. v. Stephens,* 191 W.Va. 711, 718, 447 S.E.2d 912, 919 (1994) ("motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity the meet the issue"). (Citations omitted). This Court has also said that

A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court

in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.

Syllabus Point 6, *Perdue v. S.J. Groves and Sons Co.,* 152 W.Va. 222, 161 S.E.2d 250 (1968).

The crux of the appellant's case is that Belington Bank, Inc. wrongly transferred the shares of stock in 1967. The circuit court correctly determined that the bank, in transferring the stock, fulfilled its obligations under West Virginia law. The amended complaint raised no issues which are not covered by the applicable statutes. The circuit court did not abuse its discretion in denying the motion to amend. The judgment of the Circuit Court of Barbour County is affirmed.

Affirmed.

STARCHER, Chief Justice, dissenting:

(Filed March 1, 2000)

I dissent to the conclusion in this case. The plaintiffs are attempting to recover the shares of stock that Belington Bank carelessly handled, and apparently negligently listed as belonging entirely to Herman Poling, Jr. I say "apparently" because the circuit court refused to allow the plaintiffs to conduct any discovery, particularly on the issue of whether the Bank had actual knowledge that Herman Poling, Jr., only owned a life estate in the stock.

The Bank in this case didn't claim it was ignorant of the fact that Herman Poling, Jr. was entitled to only a life estate in the stock. Instead, the Bank said its ignorance is irrelevant—it argues it is authorized to be careless and commit acts of negligence by the Uni-

---

7. The amended complaint also alleges the individual purchasers are not bona fide purchasers without notice and that Barbour County Bank wrongfully refuses to return shares of Belington Bank, Inc. stock to the appellants. At the October 16, 1997 hearing, the judge attempted to pursue the basis for these allegations. When asked why the "other people" were sued, the appellant's attorney replied, "We think that they purchased it." When asked about the Barbour County Bank, the appellants' attorney told the court that his clients "were told about loans at the Barbour County Bank where some of the

shares of stock were allegedly pledged." The judge determined these were "naked assertions." On appeal, the appellants simply state that these allegations are contained in the amended complaint; they do not argue the judge erred in his ruling on these allegations. We cannot tell whether they even believe the judge erred in his ruling as to these parties. Regardless, "[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syllabus Point 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981).

form Act for Simplification of Fiduciary Security Transfers. The majority opinion bit the hook on this argument, holding the Bank was "under no obligation to second-guess Herman Poling, Jr.'s actions[.]" The plaintiffs in this case aren't contending the Bank "second-guessed" anyone—they are claiming the Bank had actual, solid knowledge it was making a mistake. Unfortunately, the circuit court dismissed the plaintiffs' case without allowing them to conduct any discovery of that knowledge.

The plaintiffs were entirely dependent upon the evidence held by the Bank and its employees, and the majority's opinion supports the Bank's ability to conceal that evidence. The plaintiffs should, at a minimum, have been afforded an opportunity to conduct discovery. "The Law demands it, Equity sanctions it, and blind justice weeps and pleads in vain." *Gall v. Tygart's Valley Bank*, 50 W.Va. 597, 604, 40 S.E. 390, 393 (1901) (Dent, J., dissenting).

I therefore dissent. I am authorized to state that Justice McGRAW joins in this dissent.