# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2019 Term**

_____

**No. 17-1088**

_____

**FILED**

**March 21, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**THE WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN
RESOURCES, VICKIE BELL, AND LISA VINSON,**
Defendants Below, Petitioners

**V.**

**V.P. AND R.P., HER HUSBAND, INDIVIDUALLY AND AS GUARDIAN AND
NEXT FRIEND OF THE INFANT, L.T.,**
Plaintiffs Below, Respondents

_____

**Appeal from the Circuit Court of Mingo County
The Honorable Miki J. Thompson, Judge
Civil Action No. 16-C-222**

**REVERSED AND REMANDED WITH DIRECTIONS**
_____

**Submitted: February 5, 2019
Filed: March 21, 2019**

Roberta F. Green
Emily L. Lilly
Shuman, McCuskey & Slicer, PLLC
Charleston, West Virginia
Attorneys for the Petitioners

Greg K. Smith
Zachary H. Staten
Law Offices of Greg K. Smith
Williamson, West Virginia
Attorneys for the Respondents

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE HUTCHISON concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      "'Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith. . . .' Syllabus Point 4, *United States Fidelity & Guaranty Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965)." Syllabus point 1, in part, *Poling v. Belington Bank, Inc.*, 207 W. Va. 145, 529 S.E.2d 856 (1999).

2.      "'This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court.' Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002)." Syllabus point 1, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

3.      "'A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.' Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009)." Syllabus point 2, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

4. "'The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.' Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996)." Syllabus point 3, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

5. "'In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.' Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995)." Syllabus point 7, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

6. "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive

in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In the absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus point 11, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

**Jenkins, Justice:**

The West Virginia Department of Health and Human Resources ("the DHHR"), Vickie Bell ("Ms. Bell"), and Lisa Vinson ("Ms. Vinson") (collectively "the DHHR Petitioners") herein appeal from the November 27, 2017 order of the Circuit Court of Mingo County denying the DHHR Petitioners' motion to dismiss on the ground of qualified immunity.[1] The DHHR Petitioners raise a single issue on appeal: whether the Circuit Court of Mingo County failed to recognize and enforce the immunities that protect the DHHR and its individual employees from simple negligence claims with respect to the discretionary judgments, decisions, and actions in the absence of waiver. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the DHHR Petitioners are entitled to qualified immunity. Therefore, we reverse the order of the circuit court and remand the case for entry of an order granting summary judgment to the DHHR Petitioners based on qualified immunity.

---

[1] The DHHR Petitioners assert in the title of "Subsection II" of their sole assignment of error on appeal that Ms. Bell and Ms. Vinson are immune on the basis of sovereign immunity. However, the circuit court's order below rules only on the issue of qualified immunity, not sovereign immunity. Additionally, even though the DHHR Petitioners title the subsection "sovereign immunity," their clear argument is one based upon the law and principles of qualified immunity. As such, we decline to address any issue of sovereign immunity and will focus this opinion on the DHHR Petitioners' qualified immunity arguments.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

In or around April 2003, L.T.,[2] an infant, was voluntarily surrendered by her biological mother, A.T. ("Mother"), into the home of Respondents, V.P. and R.P. (collectively "the Guardians").[3] Shortly thereafter, L.T. and two of her minor siblings, J.T. and S.T.,[4] became the subject of an abuse and neglect proceeding in Logan County, West Virginia, directed at Mother. During the entirety of the abuse and neglect proceeding process, L.T. remained continuously in the physical care of the Guardians, while her siblings were in the care of the DHHR. From the time the abuse and neglect proceeding began until its conclusion in October 2006, the Guardians remained involved in the process, including the completion of a home study on the Guardians by the DHHR. Additionally, during this time period, the DHHR conducted multiple Multidisciplinary Team Meetings ("MDTs") regarding the children's and Mother's statuses. V.P. was involved in several of these MDTs.

---

[2] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See, e.g.*, *In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 733 n.1, 742 S.E.2d 419, 421 n.1 (2013); *State v. Brandon B.*, 218 W. Va. 324, 326 n.3, 624 S.E.2d 761, 763 n.1 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[3] Mother and V.P. are sisters.

[4] L.T.'s siblings, J.T. and S.T., are not a part of this appeal.

After approximately three years of the DHHR working with Mother, on July 27, 2006, Mother, by written document, voluntarily relinquished L.T. to the custody of her sister, V.P. Specifically, L.T.'s mother voluntarily and unequivocally consented to the permanent transfer of physical custody of L.T. to V.P. and of L.T.'s siblings, J.T. and S.T., to the DHHR. Mother's voluntary consent and relinquishment was submitted to the circuit court by Mother's attorney.

In October 2006, a Final Order ("Final Order") was entered in the abuse and neglect proceeding in the Circuit Court of Logan County that mirrored Mother's voluntary consent and relinquishment of her custodial rights by placing the physical custody of L.T. with the Guardians. The Final Order provided "that subsidized guardianship would be sought for [J.T and S.T.] and physical custody of [L.T.] shall remain with [V.P]." The Final Order further provided, "[t]hat the WVDHHR shall take whatever steps appropriate to pursue subsidized guardianship for the infant respondents, [J.T.] and [S.T.], and of [L.T.] is [sic] so requested by [V.P].[5] Subsidized Guardianship is in the best interest of the infant respondents and is an appropriate final disposition of this matter." (Footnote added). Moreover, the Final Order provided that the "[c]ounsel for the WVDHHR and the Guardian Ad Litem agreed with the representations of [Mother's] counsel and represented that such final disposition was in the best interest of the infant respondents" and that the "matter shall

---

[5] Clearly, the circuit court's use of the word "is" in this sentence was a typographical error that should read "if."

3

be stricken from the active docket of the Court." Although the Guardians were involved in the underlying abuse and neglect proceedings, they were not named parties therein and they assert that they were not given a copy of this Final Order until approximately 2015.

The Guardians contend that the DHHR Petitioners did not take any action to transfer legal custody of L.T. to establish permanency until November 2015 when V.P. filed a petition for guardianship in the Circuit Court of Mingo County. On November 2, 2015, V.P.,[6] by counsel, filed a petition for guardianship requesting a subsidized guardianship for L.T. By order entered January 6, 2016, the circuit court granted temporary guardianship and physical custody of L.T. to V.P. and legal custody of L.T. to the DHHR for the purpose of facilitating a subsidized legal guardianship. The DHHR conducted an additional home study on April 4, 2016, which the Guardians passed. The circuit court granted legal guardianship of L.T. to V.P. by order entered in May 2016. The Guardians filed an Application for Subsidized Guardianship which listed that the legal custody of L.T. was with the DHHR from only May 27, 2003 to October 23, 2006. The parties finalized the Subsidized Guardianship Agreement ("Agreement") in June 2016. In July 2016,

---

[6] The record is unclear if R.P. was ever officially found to be a guardian by the circuit court. However, the parties appear to refer to V.P. and R.P. as guardians for L.T. Accordingly, without making any determinations as to whether R.P. has been granted that right by the circuit court, we will refer to R.P. as a guardian.

4

pursuant to the Agreement, the Guardians began receiving a monthly subsidy for L.T. in the amount of $600.00 per month.[7]

On December 22, 2016, the Guardians filed a complaint against the DHHR in the Circuit Court of Mingo County. In their complaint, the Guardians alleged that the DHHR was ordered to "'take whatever steps appropriate to pursue subsidized guardianship for the infant [L.T.]'"; that the DHHR "negligently, recklessly[,] and in gross disregard for the rights and best interest of the infant, [L.T.], failed and refused to perform its statutory and court ordered duties"; and that the DHHR "negligently failed to take appropriate action in the best interest of said infant to obtain permanency and a final disposition, as Ordered by the [circuit court] and mandated by West Virginia Code." The Guardians further asserted that, because of the failure of the DHHR, they were forced to hire counsel and file a petition for guardianship. In their Complaint, the Guardians requested compensatory damages. In particular, the Guardians allege that L.T. was unjustly denied the monthly $600.00 subsidy from October 2006 (entry of the Final Order) to June 2016 (date of Agreement) because of the actions of the DHHR Petitioners.[8]

---

[7] The Agreement further provided that, to the extent that the child receives any federally-funded, statutory, or support benefits, the subsidy payment will be adjusted accordingly.

[8] The DHHR Petitioners assert that the Guardians continuously received monthly payments from the Temporary Assistance for Needy Families Program from at least 2006 to 2016 when they began receiving the monies from the legal subsidized guardianship.

In response, the DHHR filed a motion to dismiss the complaint arguing that it must be dismissed because of 1) sovereign immunity, 2) improper venue, 3) qualified immunity, 4) statute of limitations, and 5) insufficient service of process. On April 19, 2017, the Guardians moved to amend their complaint to add additional parties. The DHHR objected to the motion to amend, and a hearing was held on April 27, 2017. Over the objection of the DHHR, the circuit court granted the Guardians leave to amend their complaint to add DHHR employees, Lisa Vinson[9] and Vickie Bell, as defendants and held the DHHR's motion to dismiss in abeyance. On June 23, 2017, the Guardians filed their amended complaint. In response, the DHHR Petitioners moved to dismiss the newly amended complaint on grounds of 1) qualified immunity, 2) sovereign immunity, and 3) statute of limitations.

Following a hearing, the circuit court denied the DHHR Petitioners' motion to dismiss. The circuit court found that the Guardians were not parties to the underlying abuse and neglect proceeding, and were, therefore, not privy to the Final Order. The circuit court further found that the Guardians alleged that the DHHR Petitioners failed to comply with the Final Order by failing to establish permanency and take the steps necessary to achieve subsidized guardianship for L.T pursuant to that order. Construing the allegations

---

[9] It should be noted that at the time the Final Order was entered, Ms. Vinson was no longer an assigned case worker. In fact, Ms. Vinson was no longer an assigned case worker more than a year prior to Mother voluntarily relinquishing L.T. to the custody of V.P. in 2006.

"liberally in favor of the plaintiff," the circuit court found that qualified immunity is not a "one size fits all" proposition. The circuit court also found that a governmental agency and/or officer can be held liable for acts of negligence if their conduct violated a clearly established law of which a reasonable official would have known, and that, "[i]n this case, the [Guardians] allege that the agency and it's [sic] named employees violated the Order of the Logan County Circuit Court and the clearly established laws of Permanency and the best interest of the child, therefore Qualified Immunity does not bar [the Guardians'] claims." Finally, the circuit court held that issues regarding the role of the DHHR employees, and their involvement with the infant L.T., were issues that were to be properly explored in discovery, and were, therefore, premature. It is from this order that the DHHR Petitioners appeal.

## II.

### STANDARD OF REVIEW

Before discussing the appropriate standard for our review, we must address the posture in which this case is presented. The parties both appear to treat this appeal as one arising from a dismissal pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. We disagree. It is well established that

> "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and *if matters outside the pleading are presented to the court and are not excluded by it*, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith. . . ." Syllabus Point 4, *United States Fidelity &*

7

*Guaranty Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965).

Syl. pt. 1, in part, *Poling v. Belington Bank, Inc.*, 207 W. Va. 145, 529 S.E.2d 856 (1999) (emphasis added). *But see* Syl. pt. 1, *Forshey v. Jackson*, 222 W. Va. 743, 671 S.E.2d 748 (2008) ("A circuit court ruling on a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure may properly consider exhibits attached to the complaint without converting the motion to a Rule 56 motion for summary judgment.").[10] Likewise, West Virginia Rule of Civil Procedure 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(Emphasis added).

In the instant matter, the DHHR Petitioners attached several documents to their brief in support of their Rule 12(b)(6) motion to dismiss. The DHHR Petitioners further noted in their brief in support of their motion that they appended additional documents and that once the circuit court decides to accept matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment. Here, the

---

[10] However, *Forshey* is not applicable in the instant matter because the documents that were considered by the circuit court were not attached to the complaint or amended complaint, but rather to the brief in support of the motion to dismiss.

circuit court's order denying the motion to dismiss explicitly states that it is based on matters outside of the pleading. Specifically, the circuit court considered: "[the DHHR Petitioners'] motions and response of the [Guardians], all relevant legal authority, and [] both the filings and arguments of counsel[.]" Because the circuit court considered matters outside the pleadings, its decision must be treated as one for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure.[11]

Having concluded that the circuit court's order is one for summary judgment, we note that the standard for our review is *de novo*: "'[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court.' Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002)." Syl. pt. 1, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). Furthermore, "'[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.' Syl. Pt. 2, *Robinson v. Pack,* 223 W. Va. 828, 679 S.E.2d 660 (2009)." Syl. pt. 2, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751.

---

[11] We further note that while the circuit court's order analyzed the matter as a motion to dismiss rather than a motion for summary judgment, the circuit court's order contained findings of fact and conclusions of law sufficient for meaningful appellate review.

We previously have recognized that "a ruling on qualified immunity should be made early in the proceedings so that the expense of trial is avoided where the defense is dispositive. First and foremost, qualified immunity is an entitlement not to stand trial, not merely a defense from liability." *Maston v. Wagner*, 236 W. Va. 488, 498, 781 S.E.2d 936, 946 (2015). Moreover, we are guided by the following:

> "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition." Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

Syl. pt. 3, *A.B.*, 234 W. Va. 492, 766 S.E.2d 755. With the foregoing standards in mind, we address the dispositive issue herein raised.

## III.

### DISCUSSION

The issue before us is whether the Circuit Court of Mingo County failed to recognize and enforce the immunities that protect governmental agencies and their individual employees from simple negligence claims with respect to the discretionary judgments, decisions, and actions in the absence of waiver. The DHHR Petitioners assert that the Final Order "provided permanency and final disposition in the best interest of the child by holding that custody of L.T. 'shall remain with [her relative] [V.P].'" The DHHR Petitioners further assert that the abuse and neglect proceeding was then stricken from the

10

circuit court's docket, which is a "resolution that neither the [circuit court] nor counsel would have accepted if permanency had not been achieved." Accordingly, the DHHR Petitioners contend that they have "demonstrated [their] compliance with all Court orders entered in this matter or otherwise, and [have] complied with [their] statutory duties."

By contrast, the Guardians respond that the circuit court properly denied the DHHR Petitioners' motion to dismiss on the basis of qualified immunity. Specifically, the Guardians argue that the DHHR Petitioners have failed to follow the abuse and neglect proceeding's Final Order by not pursuing legal guardianship on behalf of the Guardians. The Guardians further contend that the DHHR Petitioners have improperly retained legal custody of L.T. for almost thirteen years (from May 27, 2003 to May 4, 2016), and, as such, have violated clearly established laws of permanency in West Virginia. The Guardians therefore assert that the DHHR Petitioners cannot be protected by qualified immunity. We disagree.

As an initial matter, we previously have found that "immunities must be assessed on a case-by-case basis in light of the governmental entities and/or officials named and the nature of the actions and allegations giving rise to the claim." *W. Va. Dep't of Health & Human Res. v. Payne*, 231 W. Va. 563, 571, 746 S.E.2d 554, 562 (2013). Accordingly, we will examine the claim in the case *sub judice* under the scope of the particular qualified immunity holdings that most accurately conform to the nature of the particular allegations.

11

This Court consistently has held that qualified immunity "is broad and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *W. Va. State Police v. Hughes*, 238 W. Va. 406, 411, 796 S.E.2d 193, 198 (2017) (quoting *Hutchison*, 198 W. Va. at 148, 479 S.E.2d at 658). Furthermore,

> "[i]n the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

Syl. pt. 7, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751.

Pursuant to the foregoing authority, we must first determine whether the acts or omissions of the DHHR Petitioners were discretionary acts. In the instant matter, it is undisputed that the judgments, decisions, actions, and/or omissions of the DHHR Petitioners were discretionary in nature. Furthermore, the Guardians have failed to allege that the DHHR Petitioners are within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.* Additionally, the Guardians have made no allegation in this matter that the DHHR Petitioners waived their immunity or that the DHHR Petitioners were not acting within their scope of employment. Consequently, at issue here is the next step in the analysis: whether the DHHR Petitioners violated a clearly established statutory or constitutional right or law which a reasonable person would have known or acted in a fraudulent, malicious, or oppressive manner.

12

This Court has held that,

> [t]o the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.,* 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. pt. 11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. Moreover, we previously have explained that,

> [t]o prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a "particularized showing" that a "reasonable official would understand that what he is doing violated that right" or that "in the light of preexisting law the unlawfulness" of the action was "apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).

*Hutchison*, 198 W. Va. at 149 n.11, 479 S.E.2d at 659 n.11. Furthermore, "the question of whether the constitutional or statutory right was clearly established is one of law for the court." *Id.* at 149, 479 S.E.2d at 659. *Accord A.B.*, 234 W. Va. at 517, 766 S.E.2d at 776.

In the proceedings below and on appeal, the Guardians assert that the DHHR Petitioners are precluded from relying on qualified immunity protections because the DHHR Petitioners violated a clearly established right. Specifically, the Guardians assert that the DHHR Petitioners violated the circuit court's order and/or the permanency laws

13

found in West Virginia Code § 49-4-608 (LexisNexis 2015).[12]  West Virginia Code § 49-4-608 provides, in relevant part:

> If, twelve months after receipt by the department or its authorized agent of physical care, custody, and control of a child either by a court-ordered placement or by a voluntary agreement, the department has not placed a child in an adoptive home; placed the child with a natural parent, placed the child in legal guardianship, *or permanently placed the child with a fit and willing relative*, the court shall hold a permanency hearing. . . .  The court shall conduct another permanency hearing within twelve months thereafter for each child who remains in the care, custody, and control of the department *until the child* is placed in an adoptive home, returned to his or her parents, placed in legal guardianship, or *permanently placed with a fit and willing relative*.

(Emphasis added).  *See also* West Virginia Judicial Benchbook for Child Abuse and Neglect Proceedings, at XII.  Permanent Placement[13] ("*If permanency has been achieved by* the adoption of a child, the establishment of a legal guardianship, *permanent placement with a fit and willing relative*, or another planned, permanent living arrangement before this 12-month period has elapsed, it is not necessary for the court to conduct an additional hearing designated as a "permanency hearing." (emphasis added)).

---

[12] West Virginia Code § 49-4-608 is titled "Permanency hearing; frequency; transitional planning; out-of-state placements; findings; notice; permanent placement review."

[13] The West Virginia Judicial Benchbook for Child Abuse and Neglect Proceedings may be found at http://www.courtswv.gov/public-resources/2017-AandN-Benchbook.pdf (last visited March 8, 2019).

14

Importantly, the provision that the Guardians rely upon was created in a significant recodification of the West Virginia Code in 2015, almost ten years after the conclusion of the underlying abuse and neglect proceeding. However, the statutory provision that was in effect in 2006, when the abuse and neglect proceeding at issue in this case occurred, and that the DHHR Petitioners would have been obligated to follow, was substantially similar with regard to the four ways in which permanency can be achieved. Specifically, the version in effect in 2006 provided, in relevant part:

> If, twelve months after receipt by the department or its authorized agent of physical custody of a child either by a court ordered placement or by a voluntary agreement, the department has not placed a child in an adoptive home or placed the child with a natural parent or placed the child in legal guardianship *or permanently placed the child with a fit and willing relative,* the department shall file with the court a petition for review of the case.

W. Va. Code § 49-6-8 (LexisNexis 2004) (emphasis added) (recodified at § 49-4-608 (LexisNexis 2015)). Accordingly, the established laws regarding permanency of a child in an abuse and neglect proceeding whether in 2006, 2016, or today, outline four ways for a child to achieve permanency, including *permanent placement with a fit and willing relative*.

In the case *sub judice*, it is undisputed that up until the Final Order was entered, the DHHR Petitioners appropriately handled their role in the abuse and neglect proceedings, including but not limited to the following: they conducted home studies; they conducted MDTs with Mother and other significant individuals, including, at times, V.P.,

15

important to the process to determine the best possible permanency plans for the children; they attended court ordered hearings; they placed the children in appropriate homes; and they remained in contact with the Guardians.

Furthermore, the DHHR Petitioners, using their undisputed discretionary authority, represented to the circuit court in the abuse and neglect proceeding that, after working with Mother, the children, and the children's respective caregivers, they "agreed consistent with the voluntary relinquishment that subsidized guardianship would be sought for [J.T.] and [S.T.] and physical custody of [L.T.] shall remain with [V.P]." Additionally, the DHHR Petitioners, using their undisputed discretionary authority, represented to the circuit court in the abuse and neglect proceeding that "such final disposition was in the best interest of the infant respondents."

Given the statutory framework discussed above, the DHHR Petitioners had four options to achieve permanency for L.T. While legal guardianship was one of those options, the DHHR Petitioners used their undisputed discretionary authority to recommend to the circuit court a justified and equal option: permanent placement with a fit and willing relative. The Final Order approved the DHHR Petitioners' recommendations that the respective dispositions were in the children's best interests, found this to be a final disposition,[14] and removed the matter from its active docket.

_____

[14] Additionally, there is no indication in the record that the guardian ad litem pursued any further court intervention on behalf of L.T. If the guardian ad litem had

16

Simply put, the granting of final custody to the Guardians was a permanent placement with a fit and willing relative. Such action comports with both the 2006 and current statutory frameworks. Moreover, the DHHR Petitioners complied with the Final Order when they placed L.T. in the permanent custody of the Guardians in 2006 and when they took the appropriate steps to pursue subsidized legal guardianship for the Guardians once it was requested in 2015.[15] Therefore, there was no violation of a clearly established constitutional or statutory right, and no basis for piercing the DHHR Petitioners' qualified immunity exists.

---

believed that permanency had not actually been established, then her role would have continued. *See* Syl. pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991) ("[T]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home.").

[15] While we conclude that the DHHR Petitioners complied with the Final Order and acted within their discretion in achieving permanency for L.T. in this case by placing the child with a fit and willing relative, we further remind the DHHR and guardians ad litem of the importance of all issues pertaining to children in abuse and neglect proceedings. Here, the circuit court's Final Order afforded V.P. the ability to seek subsidized guardianship of L.T., and required the DHHR to facilitate such an arrangement if so requested. While we are mindful that V.P. participated in the MDT meetings where the foster parents of L.T.'s other siblings were pursuing subsidized legal guardianship and V.P. agreed to be a permanent placement for L.T., it appears no one, not the circuit court, the DHHR, nor the guardian ad litem, directly informed V.P. of the contents of the Final Order. While it is difficult to predict whether V.P. would have qualified for subsidized guardianship had she earlier applied therefor, we remind the circuit courts, counsel for named parties, the DHHR, and guardians ad litem, to be ever vigilant in ensuring those who are awarded custody of children in such abuse and neglect proceedings are appropriately informed of the contents of circuit court orders to protect the best interests of the children involved.

17

**IV.**

**CONCLUSION**

Based upon the reasoning set out above, we reverse the November 27, 2017 order of the Circuit Court of Mingo County denying summary judgment to the DHHR Petitioners, and we remand for the entry of an order granting summary judgment to the DHHR Petitioners based upon their qualified immunity.

Reversed and remanded with directions.

18